Our fourth case for this morning is Poullard v. McDonald, and we'll start with Mr. Bridge. May it please the court, Leroy Poullard, the plaintiff, an appellant, is a black male training specialist, GS-11, at the North Chicago VA. On April 17th, 2010, Mr. Poullard filed an EEO complaint alleging specifically that he was forced to perform the duties of his boss, the then head of the education department, Norma Malin, for a two-year period during July 2008 through April 1st, 2010. During that period, Ms. Malin was paid at the GS-13 paid rate. Actually, Mr. Poullard complains that this pattern of unequal pay existed for in excess of 48 months. But he never applied, as far as I can see from this record, for a position that was classified even GS-12, much less GS-13. That is absolutely correct, Your Honor. So how can, I mean the GS schedule is pretty rigid, right? Those of us who've spent our lives working for the federal government know this. And so somebody who's graded at GS-11 is just not going to be paid at a GS-13 level. You're absolutely correct, Your Honor, and that points to the difference between the private and public sector and the difference between a failure to promote case and a failure to compensate case. Which is what makes this look like a failure to promote case. I mean, if these audits, or even if the classification specialist had come back and said, I've looked at the actual content of Mr. Poullard's activities. It really maps on to the kind of thing that's done by a GS-12 or a GS-13. Then it seems like we'd have the ball rolling. He would have had the right to have his job either reclassified or somehow changed so that he would be paid more. But I don't see where we have in this record GS-11s who are treated somehow better than he is. Well, this is a question between comparing himself to Ms. Maland. And in the federal system, as you point out, Your Honor, in order for Mr. Poullard to receive equal pay, he didn't need a competitive promotion. He could have had an administrative change in his title. He could have been given a detail reflected in his personnel file. He could have had a number of non-competitive steps taken which would have equated him and give the federal government the authority to pay him at the equivalent 13th grade or 12th grade or any grade higher. I don't see how he is the equivalent of his supervisor, Ms. Maland. I don't see the job content or anything else under our law of how you figure out comparability between employees. Fair question. The Fair Pay Act asks us to do that. And the proof in the district court is during a three-period analysis, 06 to 07, 07 to 08, and then 08 to 10, we have almost a factual agreement that Mr. Poullard was in fact running the education department. Do you think those bonuses were an admission? Yes. I believe they were admissions. Clearly, in that case, we have Kathleen Hussel, who in that case was replaced by Mary Ann Semrat as the associate director, evaluated the performance of the plaintiff and, quote, called him a one-man education department. In 07 and 08, we have the next boss, if you will, or chief come in and say, quote, The plaintiff managed the department with oversight, budget, programs, staffing, and operations. That was chief Holt. And then we have in 08 to 10, that period of time, which is the period of his lawsuit and his EEO claim, we have in the 56.1 submissions the fact that he not only prepared the annual budget, he drafted all the staffing planning departments, he made funding decisions. Previously, he okayed overtime. He did everything in the management sense. But what was, I mean, let's think of the Lilly Ledbetter situation. You know, she figures out that the people in her same job, obviously private sector, but the people in her same job classification who are male are getting paid whatever it was, you know, 20% more than the women were being paid. And so there's comparability of jobs. There's a failure to pay at the same level. So, and each paycheck, as we know from the statute, if it's a pay issue, is affected by that inherent discrimination. So I'm having trouble figuring out what it is other than failure to reclassify or promote that is the discriminatory action for Mr. Poulard. It can't, or Poulard, if that's how he pronounces it, it can't just be the pay. It is just. It's more or less conceded that it's not just the pay, because the pay flows from the GS classification. In fact, it is just the pay that is being sought by the plaintiffs. Well, I know that's what he wants, but the point is, I mean, when you look at, you have to figure out what did the VA people do wrong? What was the legal wrong done by them? They don't have the authority to pay GS-11 people any more than the schedules provide. Sure they do, Your Honor, respectfully. In fact, in this case, in 07, they gave him $15,000 under the table as pay to make up for the fact he was actually doing the management jobs. So they have every way to pay him, but they just stopped doing that. They refer to that as under the table, isn't it? Yes, it was. I'm curious about that. Apparently, it's the flexibility that the managers are provided. Yes, they had that flexibility, Judge, and I say it was under the table, because what they did was they gave him a bonus. Well, it wasn't the same. He didn't get an official raise, but he got a bonus for work they thought he did in excess of his. Yeah, pay day one, I got my normal $1,000, and then they gave him pay day two $3,500 out of nowhere. And when asked to explain that, instead of giving him a detail or something in paper showing he was actually doing this, in other words, showing it in his personnel file, they refused to do that. They said, here's the money, Leroy, and go away. Well, that was fine, except we're now in 08 and 10, and he's continuing to do the job after Ms. Malin gets there. And remember, this is a training specialist. He's down the ladder, and suddenly he's going to chairing all the committees, writing the budget, and the 56 statements that were submitted show all of these budgets for each year. Why didn't he apply for a higher classified job? Because he was told, and correctly under the OPM rules, that because he was never raised to a GS-12 position for one year, which is a year rule, he could never consider applying.  So there are no GS-12 positions at the VA? This was his first opportunity, and he couldn't apply for the GS-13 job. No, I understand that, that there are no GS-12 jobs? He couldn't work his way up? In fact, that's exactly what the testimony of the government is. They say, we don't have a GS-12 for you. Although, two years before, in 06, they gave him a 120-day promotion to the GS-12, which didn't exist. So some days it exists, some convenient days it doesn't. Mr. Bridge, can I ask you a couple of questions about the way this case was litigated? Yes, sir. The government has asserted that in the district court you never tried to draw the comparison you're drawing here between Mr. Poulard and Ms. Maland. That would be completely false. It's not only in all of the administrative records. I would submit to the court that the final agency decision in this case quote, at page nine, indicates the plaintiff complains he was forced to perform Ms. Maland's duties. That was one of the principal issues. In terms of jobs, in terms of pay, rather, since you're bringing this as an Equal Pay Act claim. In fact, we did, in fact, in all areas, ask for compensation in the administrative level because of the performance of Maland's duties in every aspect of the case. What was the independent... That was a prayer for relief in the administrative level, too. If I could just follow up on one other aspect here, and I'd be interested in the government's response to that. In addition, at page 15 of the defense brief, there's discussion of Mr. Poulard's deposition testimony where, as I understand this, he kept saying, I wanted to be reclassified, I wanted to be promoted, and I didn't see any response to that in your reply brief. In fact, Poulard indicated he wanted to be reclassified and when he uses the term of art reclassified, he said, I want it like I had it before when you gave me that 120 days because the rules say if I'm going to continue to do a 13 job, Ms. Maland's position, and I'm going to be the boss here in this department, you've got to do something to reflect that in the paperwork. I want my compensation in an order in the federal system to get that. I have to have something that says GS-13, GS-4. So he has to be promoted in other words? Not promoted, Judge. Well, reclassified, which is in a sense a promotion, and so the legal distinction for the Ledbetter Act purpose is to decide whether the pay that flows from that reclassification is the kind of pay that the Ledbetter Act is talking about or whether it's really all a function of the reclassification which is outside the scope of the statute. Yes, Judge. In fact, this case is interesting in that the court conceded at page 15, quote, Poulard does not point to any evidence suggesting he applied for or was selected for the GS position after January 19, 2010. The defendant likewise, quote, at R46 paragraph 18, 56.1, Poulard did not apply for Maland's position. Likewise at page 12 of their brief, Poulard never applied for a position at any point. Page 19 of their brief, Poulard's claim that he should have been compensated a higher pay grade fails because, as he admits, he never sought a promotion in this case. These are admissions not only by the defendant but by the trial court that this is not a failure to promote case. I don't understand how you read that out of what you just said. Well, Mr. Poulard say, I never applied for a promotion to a 13 because all I want was fair pay. Just give me the money. You can keep your titles. I'm not interested in your titles. But that's not really possible the way the GS system works. I mean, it really isn't. There are ways that he can be paid as a GS 13 for doing his job. We've identified at least two here this morning. Under the table bonuses or short-term administrative classification changes. Both of which they tried and plied off on Mr. Poulard. Presumably there are limitations on how long you can do a short-term administrative promotion like that? I believe they start out at 120 days which would be the average and they can go all the way up to a year and a half. All right. Well, if you want to save a minute for rebuttal, you have time to do it. Thank you. Mr. Kelly. May it please the Court. Couillard's pay discrimination theory fails for at least three reasons. Before you get into your three reasons, could you give us a pricey of how much flexibility One of Mr. Bridge's key points is that Mr. Poulard could have been left at the GS 11 level but been paid as if he were a GS 13. So can you shed some light on how the regulatory structure for pay works? He said he could have a year and a half as a GS 12 which would have teed him up for a reclassification or a job application to a 13. I don't believe, I can't shed much light on it. I don't think the record I don't think it's in the record how those regulations work as far as how much discretion managers have or time limits for temporary promotions but I don't think it's relevant to this appeal because Couillard has straddled the line between two different theories here, failure to promote and pay discrimination. And I don't think resolving what the agency's discretion to use these other methods for temporarily adjusting compensation are necessarily relevant to resolving either of those claims. I think both of those claims fail for other reasons. Well, I mean, certainly Equal Pay Act cases do require the court even in, again, the Leadbetter situation do require the court to look at the substance of the job that the person is doing. Employers don't have the easy out of just saying oh, I've decided to call your job an X instead of a Y and get away with a violation of the Equal Pay Act. So as I understand Mr. Poullard's theory, it's in substance I was doing every single thing that people classified in the GS-13 position were and yet you paid me less. So why isn't that an equal pay problem? That claim fails because though Couillard alleges generally I was doing managerial work, if you look at the substance of the actual tasks Couillard alleges he was performing, they don't rise to the level of his comparator for equal pay, Dr. Mayond, his supervisor. The tasks Couillard alleges that he was performing were things along the lines they were ministerial type tasks that were delegated by the supervisor. They were approving leave, they were approving certain expenses I think not above a certain dollar threshold things along those lines. There's no allegation by Couillard that he was supervising employee performance, that he was evaluating employee performance, that he was disciplining other employees, that he was ensuring department work product was up to standards. Now where in the does this come in the record from the classification specialists evaluation of his job or is it in depositions where is this in the record? It's in a couple of different places. It's in the administrative record I believe. I guess the clearest place is there was a series of two emails that Couillard wrote to his supervisor at his supervisor's request to an attempt to resolve this very problem. Those two emails were one of the places where Couillard summarized here's the tasks that I think I'm doing that are above my pay grade. Those same tasks were the tasks that a classification specialist reviewed and found to have been appropriately assigned to someone at Couillard's pay grade. Was this in early 2010? The emails were in early 2010. This is within the 45 day period, the desk audit request. The emails, yes, one was one was immediately before and one was immediately after the EEOC administrative complaint. And Judge Magnin? No, the audit, whatever they call this, wasn't an audit. The task evaluation did you call that? A classification specialist evaluated the emails. Both sides agreed there was no desk audit. The record's not really clear on what the difference between those two is. I was going to ask you that, thank you for saying that. I've endeavored to try and find that out and haven't had much success. My inference is that this, what happened was a less formal procedure than an actual desk audit. Well the reason I explore that is because you just said when you left here, you said you just wanted the money, not a title. And that seems to be the structure in most of the federal government. You've got to have the title and to get to a 13, you have to be whatever it's called to be in the 13. In our own internal stuff, we have that for the judiciary. Law clerks, for example, they can go to an 11, a 12, and a 13 and if they hang around long enough, you can get more than that I guess, but it is the title is what you are, as opposed to just you think you ought to do more. A lot of people think they do more work than somebody else does and they don't like that. I think that's exactly right. The government pay structure is rigid and I think it's also important to recognize that Couillard in many ways conveys clearly that this claim was a failure to promote claim. That was the district court's basis for resolving this case. That it was a failure to promote claim but he never sought promotion, therefore it was a defective failure to promote claim. At deposition for the first EEOC complaint, at deposition for this case, Couillard was asked several different times questions along the lines of, so we understand that your claim here is that you were doing tasks above your pay grade. Now, suppose we were just to give you extra compensation, would that resolve things? And more than once at deposition, Couillard testified, no, I wanted the desk audit. I wanted a promotion. So when given the chance to directly state what his claim was, Couillard made clear this was a failure to promote case. Although, you say he made it clear, but I'm thinking of the idea that the plaintiff is the master of his own complaint, you know, maybe it would be easier for you if it was a failure to promote case but if he says it's a discriminatory pay case, he points to Maland getting more money, he gets less money. Why don't we take him at his word? Even if he is taken at his word, the failure, the pay discrimination claim fails for two clear reasons. First, forfeiture. At summary judgment, which is the put up or shut up moment before the trial court, Couillard does not point to Dr. Maland as a similarly situated employee. Sure, Couillard does state, I was performing tasks delegated to me by Dr. Maland, but he does not state Maland was a similarly situated employee. He points to two other people. He points to two similarly situated Caucasian trading specialists. That is, two other employees that had the same job as Couillard were at the same grade and received the same compensation. So because Couillard did not point to Maland before the district court, that's forfeited. It cannot be a reason for this court to reverse the district court's judgment. And on the merits, it fails as well for a reason that we spoke about a little bit earlier ago, which is Couillard never claims to have done the core duties of supervisor. This court has commented that it's next to impossible to sue an employee for a discrimination case. In this case, there's no reason to break from that rule. Couillard doesn't claim to have evaluated other employees. Couillard doesn't claim that if the folks up the chain of command from Maland had a problem with what the department was doing, no claim that they'd be going to Couillard to explain what was going on. Supervisors delegate. That's part of the job of supervisor. My supervisor is an attorney. I'm an attorney. He may ask me to cover a hearing. He may ask me to cover a deposition. He may even reassign an entire case that he's working on to me. That doesn't make me a supervisor because I'm not evaluating other attorneys or approving their work product. Judges ask clerks all the time to do research or to even write draft opinions. It doesn't make the clerk entitled to be hold the title of judge or to be compensated at the same rate the judge is compensated. So it fails on the merits. There's two other claims in this case besides the main claim which is either disparate pay or better to promote. The other two are retaliation and hostile work environment. These were disposed of by the district court as well. I'm going to mention the threat idea in talking about this. For the retaliation claim, one of the allegations is that there were threats against Couillard. The district court correctly held that those retaliatory action, that is an action that has an adverse effect on the job because they were vague general threats that were never fulfilled. There were threats along the lines of we're going to take care of you, we're going to make an example out of you, I have friends in Washington that could make an example out of you. But there's no allegation that those were ever followed through with in some way. This court has held that an unfulfilled threat, that does not rise to the level of Is it just because it's unfulfilled or because it's somehow not sufficiently precise to be credible or to induce a change in behavior? I think both are relevant. I think the vaguer the threat is, the less able it is to rise to the level of material adverse effect on job. If it's a specific threat that I will do X if you will do Y, then perhaps that would deter someone from taking some action that's important to their job, but that's not what we have here. It's very vague and again, unfulfilled. There's also a hostile work environment claim here and the district court was correct in holding that the allegations taken as true for the hostile work environment claim were not, they were not enough to be severe and pervasive, which is what's required. Severe or pervasive. Severe or pervasive. You actually said it right in your brief, luckily, but it's or. Unless there's further questions, I ask this court to affirm this court's judgment. Thank you very much Mr. Kelly. Mr. Bridge, I think you have about a minute. Thank you, Your Honor. With respect to the waiver argument, which I respectfully submit as unfounded entirely, at the summary judgment stage, page three of my memorandum back to the government, I stated, quote, forced to perform the duties of de facto chief of the department for two years after Malin's appointment. I specifically referenced Malin's appointment and the jobs that he was forced to do were hers in that, so there is no waiver. Clearly, Judge, the government would come before you at this point and say, you know what, Coulard may have been doing some of these duties but we don't think he was doing all of them. I would ask the court to look at the 56-1 submissions in this case, and I made a point of it in my brief, to point out that the government disputed not one of the allegations of managerial duties done by Mr. Coulard. There was no additional facts alleged that Mr. Coulard didn't do certain duties or was deficient and did only 80%. Not one piece of evidence was produced by the government. To the contrary, Mr. Coulard filed an exhaustive 56-1 statement wherein he showed, I prepared this budget, this strategic plan, I authorized this overtime, I funded this many positions, I supervised this many people. Very specific 56-1s which were admitted cleanly and without reserve by the defendant. Thank you very kindly, Judge. Thank you very much. Thanks to both counsel.